UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br><br>The RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,<br><br>Reorganized Debtors. | Case No. 2:12-cv-01272-MMD-VCF<br><br>Bankruptcy Case No. BK-09-14814-LBR<br>(Jointly Administered)<br>Chapter 11<br>Adversary No. 12-01099-LBR<br><br>ORDER |
| THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC, et al.,<br><br>Plaintiffs,<br>v.<br><br>JAMES M. RHODES, et al.,<br><br>Defendants. | |

## I.  SUMMARY

Before the Court are the parties' objections to the Bankruptcy Court's Report and Recommendation ("R&R") addressing the Rhodes Defendants' Joint Motion for Partial Summary Judgment (case no. 12-01099, dkt. no. 198), the Litigation Trust's Countermotion for Partial Summary Judgment on Count 14 (Declaratory Judgment) (case no. 12-01099, dkt. no. 215), and the Rhodes Defendants' Objection to Litigation Trust's Request for Judicial Notice (case no. 12-01099, dkt. no. 286). (Dkt. no. 25.) For the reasons set forth below, the objections are overruled and the R&R is adopted in full.

## II.  BACKGROUND

The Litigation Trust of the Rhodes Companies, LLC, et al. (the "Litigation Trust" or "Debtors") operated a home-building business known as "Rhodes Homes." In late 2005, James Rhodes and his affiliated entities (the "Rhodes Defendants") allegedly caused the

Litigation Trust to enter into an "ill-advised" $500 million loan, and then misappropriated approximately $110 million of the loan proceeds. The Litigation Trust asserts that $38.5 million of the misappropriated funds went towards paying Mr. Rhodes' personal income tax obligations. Additionally, the Litigation Trust alleges that the Rhodes Defendants proceeded to delay their bankruptcy filings in order to launch a new home-building company in direct competition with them. The Litigation Trust asserts that this resulted in their becoming over-leveraged, under-capitalized, and insolvent.

On March 31, 2009, and April 1, 2009 (collectively, "Petition Date"), each of the debtors in this case commenced a voluntary case with the Bankruptcy Court under Chapter 11 of Title 11 of the United States Bankruptcy Code.

On February 18, 2010, the First Lien Steering Committee filed the Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Debtors ("TAP"). The TAP established the Litigation Trust to enforce all rights to commence and pursue, as appropriate, any and all causes of action, whether arising before or after the Petition Date.

On March 12, 2010, the Bankruptcy Court entered an order confirming the TAP. Under the Confirmation Order, the TAP was substantially consummated on the "Effective Date," and Notice of the Effective Date was filed by the First Lien Steering Committee on April 1, 2010.

On or about May 11, 2012, the Litigation Trust filed a Complaint in *In re the Rhodes Companies, LLC.*, against Defendants. (Case no. 12-01099, dkt. no. 1.) The Complaint asserts sixteen (16) causes of action, involving alleged breach of fiduciary duty, alter ego, and allegedly fraudulent conveyances.

On July 17, 2013, Defendants filed a Motion to Withdraw Reference. (Dkt. no. 1.) This Court denied the Motion to Withdraw Reference on November 7, 2012. (Dkt. no. 20.)

The Bankruptcy Court subsequently considered the Rhodes Defendants' Joint Motion for Partial Summary Judgment (case no. 12-01099, dkt. no. 198), the Litigation

Trust's Countermotion for Partial Summary Judgment on Count 14 (Declaratory Judgment) (case no. 12-01099, dkt. no. 215), and the Rhodes Defendants' Objection to the Litigation Trust's Request for Judicial Notice (case no. 12-01099, dkt. no. 286). In their Motion, the Rhodes Defendants sought partial summary judgment on the following claims in the Complaint: 1, 2, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, and 16. The Litigation Trust's Motion sought summary judgment on Count 14 alone. On July 1, 2013, the Bankruptcy Court issued its R&R. (Dkt. no. 25.) The Bankruptcy Court recommended Defendants' Motion be granted as to parts of counts 1, 2, 5-9, 11-13. The Court further recommended that Defendants' Motion be granted as to counts 14 and 15 in their entirety, and denied as to count 16 in its entirety. Because the Litigation Trust only sought summary judgment on count 14, its motion was summarily denied. Finally, the Bankruptcy Court recommended that the Rhodes Defendants' Objection to the Litigation Trust's Request for Judicial Notice be granted.

Both parties filed objections to the R&R. The Rhodes Defendants challenge the Bankruptcy Court's determination regarding count 16 (dkt. no. 26), and the Litigation Trust challenges it's determination regarding counts 1, 2, and 14 (dkt. no. 28). The Court has reviewed the objections, as well as the parties' responses (dkt. nos. 31, 34), and has considered the arguments made during the December 19, 2013, hearing.

### III. LEGAL STANDARD

#### A. Standard of Review

Review of a Bankruptcy Court's Report and Recommendation in a non-core proceeding is subject to Federal Rule of Bankruptcy Procedure 9033. "The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule." Fed. R. Bankr. P. 9033(d). In conducting de novo review, the district court gives no deference to the Bankruptcy Court. "The district judge may accept, reject, or modify the proposed findings of fact or

///

conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." *Id.*

### B. Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery, and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Counts 5–9, 11–13 and 15 and Request for Judicial Notice

The Bankruptcy Court recommended that Defendants' Motion be granted as to parts of counts 5-9, 11-13 and count 15 in its entirety. Neither party has objected to these recommendations. Nor has the Litigation Trust objected to the Bankruptcy Court's granting of the Rhodes Defendants' Objection to the Litigation Trust's Request for Judicial Notice. This Court, therefore, summarily adopts the Bankruptcy Court's recommendations regarding these counts and the Request for Judicial Notice.

### B. Counts 1–2

Count 1 involves a claim for breach of fiduciary duty against Sedora Holdings, Sagebrush Enterprises, and James Rhodes and Count 2 alleged a claim against Rhodes for aiding and abetting a breach of fiduciary duty. (Case no. 12-01099, dkt. no. 1 at 41-45.) The Rhodes Defendants sought summary judgment on parts of Counts 1 and 2, arguing that claims involving acts that occurred before March 31, 2006 — three years prior to the petition date — are time barred. (*See* dkt. no. 25 at 7.) The Bankruptcy Court agreed and recommended summary judgment on claims premised on acts that occurred before March 31, 2006. (See *id.* at 5-10.) The Litigation Trust objects to the Bankruptcy Court's recommendation and argues that the statute of limitations has not run under the adverse domination doctrine. (*See* dkt. no. 28 at 24-28.)

Counts 1 and 2 are governed by a three-year statute of limitations that begins to run when an aggrieved party discovers the facts constituting the wrong. *See* N.R.S. § 11.190(3)(d). Under Nevada law, a discovery by a corporate officer or agent can be imputed to the corporation ("imputation doctrine"). *See In re Amerco Derivative Litig.*, 252 P.3d 681, 695 (Nev. 2011). The imputation doctrine is triggered when an agent obtains knowledge "while acting in the course of his employment and within the scope of his authority" and the corporation is responsible for this knowledge even if "the officer or agent does not in fact communicate his knowledge to the corporation." *Strohecker v. Mut. Bldg. & Loan Ass'n of Las Vegas*, 34 P.2d 1076, 1077 (1934) (quotation omitted).

There is an exception to the imputation doctrine when an agent is acting solely on his own behalf, without benefiting the corporation ("adverse interest exception"). *Keyworth v. Nev. Packard Mines Co.*, 186 P. 1110, 1113 (Nev. 1920). This exception is designed to protect the corporation from "outright theft or looting or embezzlement." *In re Amerco Derivative Litig.*, 252 P.3d at 695 (quoting *Kirschner v. KPMG LLP*, 398 N.E.2d 941, 952 (N.Y. 2010)). Under the adverse interest exception, the agent's actions are not imputed to the corporation and thus the running of the statute of limitations is not triggered by the agent's knowledge of the facts constituting the fraudulent conduct.

The adverse interest exception itself has an exception for agents who are the sole agent or shareholder of a corporation ("sole actor rule"). Under Nevada's sole actor rule, if an agent and the principle are one and the same, the agent's knowledge will be imputed to the corporation even if his actions are against the corporation's interests. *Id.* at 695-96 ("Pursuant to this rule, an agent's knowledge is imputed to the corporation because the principle and agent are one and the same.") (quotation omitted). "The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability." *In re Personal & Bus. Ins. Agency,* 334 F.3d 239, 243 (3d Cir. 2003) (quotation omitted).

///

In their briefs and in oral argument, the parties agreed that James Rhodes was acting as a sole actor and, thus, his actions were imputed to the corporation. (*See* dkt. no. 25 at 9.) Applying the sole actor rule, the three year statute of limitations has run on all acts that occurred prior to March 31, 2006, and Counts 1 and 2 are time-barred as they relate to these acts. In response, the Litigation Trust urges this Court to adopt the doctrine of adverse domination, which it argues would effectively toll the statute of limitations and retain Counts 1 and 2.

The doctrine of adverse domination is applied either to delay the accrual of a cause of action or to toll a statute of limitations in situations in which a corporation brings claims against its directors for injuries to the corporation. *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 402 (Md. 1994). Jurisdictions that adopt the adverse domination doctrine typically apply either the "disinterested majority" version or the "single disinterested director" version. *Id.* at 406. Both versions allow tolling a statute of limitations when a culpable individual, or individuals, are in charge and impose total control over a corporation. *See id.* The rationale behind the adverse domination doctrine is that directors are unlikely to initiate actions that could reveal their own wrongdoing. *See Resolution Trust Corp. v. Gardner*, 798 F. Supp. 790, 795 (D.D.C. 1992). Nevada has not adopted the adverse domination doctrine, as both parties acknowledge. *See USACM Liquidating Trust v. Deloitte & Touche*, No. 11-15626, 2013 WL 1715532, at *2 (9th Cir. April 22, 2013).

Not only has the Nevada Supreme Court failed to adopt the adverse domination doctrine, the Litigation Trust has not demonstrated that it is likely. First, this Court has previously declined to find that the Nevada Supreme Court is likely to adopt the doctrine. *See USACM Liquidating Trust v. Deloitte & Touche LLP*, 764 F. Supp. 2d 1210, 1232 (D. Nev. 2011). Second, as applied to this case, the doctrine of adverse domination would be in direct conflict with Nevada's sole actor rule and thus Nevada's firmly established law. Under Nevada's sole actor rule, James Rhodes' acts are imputed to the corporation even if they are found to be against the corporation's interests, thus triggering the statute

of limitations. In arguing for the adverse domination doctrine, the Litigation Trust relies on the same set of facts used to establish that the sole actor rule applies to demonstrate that the statute of limitations should instead be tolled. (*See, e.g.*, dkt. no. 28 at 25 ("Given that James Rhodes (through Sagebrush) completely dominated and controlled the Debtors at all relevant time periods, the doctrine of adverse domination is implicated.") (citation omitted).) A finding by this Court that the adverse domination doctrine should apply under these circumstances would not only extend a doctrine never before applied in Nevada, it would also negate the implications of Nevada's established sole actor rule. This Court, therefore, declines to find that the adverse domination doctrine applies.[1]

The Court grants the Rhodes' Defendants Summary Judgment Motion as it relates to Counts 1 and 2 and overrules the Litigation Trust's objections to the R&R. The R&R is adopted as to Counts 1 and 2.

**C.    Count 14**

Count 14 is a claim for declaratory relief in which the Litigation Trust requests a declaration that: (1) Debtor Rhodes Ranch General Partnership ("RRGP") was never validly divested of its 99% membership interest in Gypsum Resources, LLC ("Gypsum"); and (2) RRGP still holds a 99% interest in Gypsum. (*See* dkt. no. 28 at 2.) Both parties moved for summary judgment on Count 14 and the Bankruptcy Court recommended that Count 14 be dismissed in its entirety. The Litigation Trust objects to this

---

[1] At oral argument, the Litigation Trust argued that the sole actor rule and the adverse domination doctrine are compatible. As support, the Litigation Trust asserted that several jurisdictions have incorporated both doctrines, but it failed to provide examples of such jurisdictions. The statutory schemes described in cases that the Litigation Trust did mention in oral argument and in the briefs, namely cases from Maryland, Oregon, and Kansas, are not sufficiently analogous to the Nevada sole actor rule to support the Litigation Trust's assertion. *See F.D.I.C. v. Smith*, 980 P.2d 141 (Or. 1999), *Resolution Trust Corp. v. Scaletty*, 891 P.2d 1110 (Kan. 1995), *Hecht v. Resolution Trust Corp.*, 635 A.2d 394 (Md. 1994). In any event, the Court is not persuaded that the Nevada sole actor rule is compatible with the adverse domination doctrine as applied to this case.

recommendation, arguing that RRGP's ownership interest was never validly transferred. (*See* dkt. no. 28 at 7-8.)

Gypsum was created on March 3, 2003. (*See* dkt. nos. 28 at 2; 34 at 5.) An operating agreement was created for Gypsum ("Original Operating Agreement") that listed RRGP as possessing a 99% membership interest and the James Michael Rhodes Irrevocable Children's Education Trust ("Irrevocable Trust") as possessing a 1% interest. (*See id.*) Both parties signed the Original Operating Agreement. (*See* dkt. no. 29 at APP 50.) A second operating agreement ("Amended Operating Agreement") was subsequently created, which listed in the recital the following members and their ownership interests: (1) Sagebrush Enterprises (.99%); (2) Sedora Holdings (92.429%); (3) Rhodes Ranch LLC (5.581%); and (4) the Irrevocable Trust. (*See* dkt. nos. 29 at APP 51, 74; 34 at 7.) RRGP was not listed as a member of Gypsum on the Amended Operating Agreement but the Agreement stated that RRGP accepted the Agreement and it was signed by RRGP's managing general partner, Sagebrush, through that corporation's president James Rhodes. (*See* dkt. nos. 29 at APP 73; 34 at 7.) There is no dispute that the parties whose signatures were required to effectuate an amendment to the Operating Agreement all signed the Amended Operating Agreement.

The parties disagree about whether the creation of the Amended Operating Agreement constitutes a valid means to transfer RRGP's interest in Gypsum. The Rhodes Defendants argue that the parties to the Original Operating Agreement were entitled to amend the agreement in any fashion consistent with the Original Operating Agreement's restrictions under § 10.4. The Litigation Trust argues that a valid transfer of ownership interests can only occur pursuant to Article VII of the Original Operating Agreement, which outlines restrictions on the transferability of membership interests.

Limited-liability companies may, but are not required to, adopt an operating agreement. N.R.S. § 86.286(1). An operating agreement can only be adopted by unanimous consent. *Id.* Once created, an operating agreement "[m]ust be interpreted and construed to give the maximum effect to the principle of freedom of contract and

enforceability." *Id.* § 86.286(4)(b). Modification is subject to the terms of the operating agreement. *Id.* § 86.286(1). Section 10.4 of the Original Operating Agreement governs amendment to the agreement. It states that "[e]xcept as provided otherwise within this Agreement, this Agreement may only be amended by the unanimous written agreement or consent of all the Members." (Dkt. no. 29 at APP 47.) The parties do not dispute that Gypsum was governed by the Original Operating Agreement and that an Amended Operating Agreement was created with the unanimous consent of all parties.

The Court finds that amending the Operating Agreement constitutes a valid means to transfer RRGP's membership interests in Gypsum. The Amended Operating Agreement complied with the requirements of both N.R.S. § 86.286 and the Original Operating Agreement § 10.4. Paragraph F of the Amended Operating Agreement expressly states that the amendment was made "in order to reflect the changes in the ownership of member interests set forth above." (*See* dkt. no. 29 at APP 51.) In fact, the Amended Operating Agreement's recital recorded the transfer of ownership interests that it effectuated. (*See id.*) In Nevada, statements in the recitals to an agreement are conclusively presumed to be true. N.R.S. § 47.240(2). The recital of the Amended Operating Agreement, made pursuant to the Original Operating Agreement's terms, is therefore conclusively presumed to be true.

Finally, recognizing amendment of the operating agreement to be a valid avenue through which membership interests may be transferred does not, as the Litigation Trust asserts, render Article VII of the Original Operating Agreement meaningless. Section 7.1, titled "Permitted Transfers," outlines four types of transfer that may occur. Section 10.4 does not negate these forms of transfer. Instead, it allows the members to unanimously agree to modify the membership agreement, including the members and membership interests themselves. Article VII remains the operative section for determining how transfer can be effectuated within the operative agreement, i.e. without unanimous agreement or consent to modification of the document as a whole. The parties elected to effectuate the transfer of RRGP's membership interests by way of an amendment to the

Operating Agreement instead of utilizing the process in Article VII. This method of transfer does not render Article VII meaningless and is consistent with the express terms of the Operating Agreement.

The Court need not reach the parties' arguments regarding Article VIII as it finds that RRGP performed a valid transfer of its membership interests through amendment to the Original Operating Agreement, pursuant to § 10.4. The Rhodes Defendants rely upon financial, tax, and audit records to argue that RRGP did effectuate a transfer of its membership interests in Gypsum. The Court finds that these records are not relevant to the threshold legal issue of whether the transfer of RRGP's membership interest was valid under the Original Operating Agreement. This is because even post transfer conduct consistent with the transfer would not rescue an otherwise invalid transfer. The Court therefore overrules the Litigation Trust's objections to the Bankruptcy Court's recommendation regarding Count 14 and the R&R is adopted as it relates to Count 14.

### D. Count 16

Count 16 is raised by the Litigation Trust as an alternative claim should the Court find that the transfer of Gypsum is valid. In Count 16, the Litigation Trust argues that if the transfer is considered valid, it should be found fraudulent under 11 U.S.C. § 544(b) and N.R.S. § 112.180. (Case no. 12-01099, dkt. no. 1. at 61.) The Rhodes Defendants argue in their Motion for Partial Summary Judgment that Count 16 should be dismissed because it is time-barred. The Bankruptcy Court recommended that summary judgment be denied, stating that the Rhodes Defendants had not met their burden in demonstrating that the statute of limitations has run. (*See* dkt. no. 25 at 18.) The statute of limitations for Count 16, the Bankruptcy Court found, is either four (4) years after the fraudulent transfer or one (1) year after the transfer was or reasonably could have been discovered ("discovery rule"). (*See id.* (*citing* N.R.S. § 112.230).)

In their objections, the Rhodes Defendants state that the Bankruptcy Court's characterization of the applicable statute of limitations in correct for claims under N.R.S. § 112.180(1)(a), alleging actual intent, but not for claims under § 112.180(1)(b).

1  Defendants correctly assert that the one-year discovery rule, as an alternative to the
2  four-year statute of limitations, is only applicable to fraudulent transfers alleged under
3  N.R.S. § 112.180(1)(a). *See* N.R.S. § 112.230.

4  In response, the Litigation Trust explains that Count 16 only raises claims under
5  N.R.S. § 112.180(1)(a) and thus the Bankruptcy Court's application of the one-year
6  discovery provision was correct. Considering the face of the Complaint and the Litigation
7  Trust's representations in both its brief and in the December 19, 2013, hearing, this
8  Court construes Count 16 to allege only an actual intent fraud claim under N.R.S.
9  § 112.180(1)(a). As a result, the statute of limitations, as the Bankruptcy Court identified,
10 includes the discovery rule. *See* N.R.S. § 112.230(1). Applying the discovery rule, there
11 remains a genuine issue of material fact regarding when the last unsecured creditor
12 discovered, or reasonably could have discovered, facts giving rise to the actual intent
13 avoidance claim. The Rhodes Defendants conceded this point during the December 19,
14 2013, hearing. This Court therefore adopts the Bankruptcy Court's recommendation
15 regarding Count 16 and denies summary judgment on that claim.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that the Bankruptcy Court's Report and Recommendation (dkt. no. 25) is adopted in full.

It is further ordered that the Rhodes Defendants' Joint Limited Objection (dkt. no. 26) and the Litigation Trust's Objections (dkt. no. 28) are overruled.

DATED THIS 27th day of December 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE